**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHWESTERN DIVISION**

| | | |
|---|---|---|
| Major Drilling America, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER VACATING THE** |
| vs. | ) | **TEMPORARY INJUNCTION** |
| | ) | |
| Redemption Energy, LLC, | ) | |
| | ) | Case No. 4:13-cv-048 |
| Defendant. | ) | |

Before the court is a "Motion for Relief from State Court Temporary Injunctive Order" filed by defendant, Redemption Energy, LLC ("Redemption"), on May 17, 2013. For the reasons set forth below, the motion is granted.

**I.  BACKGROUND**

Redemption is a Minnesota limited liability company in the business of developing and operating saltwater disposal wells. On July 20, 2012, it obtained a "Saltwater Disposal Lease" from landowners in McKenzie County, North Dakota. (Doc. No. 23-1). Under the terms of the lease, the landowners granted Redemption the right to construct, operate, and maintain a well for the disposal of saltwater on its property in McKenzie County. In return, they would receive eight cents per barrel of salt water injected into the well. Notably, the lease did not authorize production of oil or gas.

On October 24, 2012, Redemption filed an application with the North Dakota Industrial Commission ("Industrial Commission") seeking permission to inject saltwater and other fluid wastes into a new "commercial" saltwater disposal well to be drilled on the above tract it leased in McKenzie County to be known as the "Alamo SWD-1." Redemption's application stated in part:

1

> Redemption Energy proposes to drill and operate commercial salt water disposal wells, the subject well being Alamo #1. The Alamo #1 will be a new salt water disposal facility in Poe field in NE NE, Section 7, T151N, R99W, McKenzie County, North Dakota. Redemption Energy will provide salt water disposal services for operators in the local area. Salt water will be hauled by truck to the facility, treated, and then stored in tanks before being injected down the well. Injection water will be either produced water, flowback water, or pit water from new Bakken and Three Forks wells in the local area.

(Doc. No. 23-4).

The Industrial Commission approved Redemption's application and issued a "Permit for Fluid Injection," dated January 17, 2013, for the Alamo SWD-1 allowing Redemption to inject salt water and other "Class II fluids" generated from the drilling and operating of oil and gas wells and from gas plant operations. (Doc. No. 23-2).

On January 24, 2013, Redemption contracted with Major Drilling America, Inc. ("Major"), a Utah corporation that provides surface and subsurface drilling services, to drill the Alamo SWD-1. In accordance with the parties' contract, Redemption pre-payed $200,000.00 to Major on January 25, 2013. Major mobilized on the well site the following day and commenced drilling.

Drilling came to a standstill in early February 2013. According to Major, a third-party acting on Redemption's instructions introduced fresh water into the well despite Major's instruction that only brine water be used. Shortly after the fresh water was introduced into the well, Major's drilling tools and equipment became stuck. Major's efforts to recover its tools and equipment from the well were unsuccessful.

On February 20, 2013, Major submitted two invoices to Redemption. (Doc. No. 1-3). The first invoice was for labor, services, and materials it had provided from February 1 through February 15, 2013. The second invoice was for the tools and equipment stuck in the well.

On February 27, 2013, Major filed a Statement of Oil and Gas Well Lien (hereinafter referred to as "the lien") pursuant to N.D.C.C. ch. 35-24 on the following property associated with the Alamo SWD-1:

- A. The whole of the leasehold for oil or gas purposes to which the materials or services were furnished, or for which the labor was performed, and the appurtenances thereunto belonging;

- B. All materials and fixtures owned by the owner or owners of such leasehold and used or employed, or furnished to be used or employed in the drilling or operating of the well known as The Alamo SWD #1, including, but not limited to the following:

    - (1) Any upright tanks;
    - (2) All casing of any size or type attached to the well or sitting on said leasehold;
    - (3) Any and all landing joints attached to the well or sitting on said leasehold;
    - (4) Any semi-trailer, including the 20111 Freightliner Coronado, which may be subject to this lien

- C. All oil or gas wells located on such leasehold, and the oil or gas produced therefrom and the proceeds thereof inuring to the working interest therein as such working interest existed on the date such labor was first performed or such material or services were first furnished; or

- D. The whole of the pipeline to which the materials or services were furnished, or for which labor was performed, and all buildings and appurtenances thereunto belonging, including, without limiting the generality of the foregoing, gates, valves, pumps, pump stations, and booster stations, and upon all materials and fixtures owned by the owner of such pipeline and used or employed or furnished to be used or employed in the construction thereof.

(Doc. No. 1-3).

On April 8, 2013, Major filed in state district court: (1) a complaint against Redemption for breach of contract, foreclosure of the lien, and injunctive relief under N.D.C.C. ch. 35-24; and (2) an Expedited Motion for Temporary Injunctive Order pursuant to N.D.R. Ct. 3.2 and N.D.C.C. §§ 35-24-17, 32-06-02, and 32-06-03. (Doc. Nos. 1-2, 1-3, and 1-5). On April 11, 2013, the state

district court granted Major's motion and issued a "Temporary Injunctive Order" enjoining Redemption from removing or disposing of the property attached to Major's lien until the injunction was either vacated by the court or final judgment was entered. The court also stated in its order that it would hold a hearing if requested by either party to determine whether the injunction should be vacated or made permanent. (Doc. Nos. 1-2 and 1-9).

On April 24, 2013, Redemption filed a Notice of Removal with this court. On May 17, 2013, it filed a motion requesting this court to dissolve the state court's temporary injunctive order. (Doc. No. 17). On June 28, 2013, the court convened a hearing on Redemption's motion after the briefing was completed.

Redemption contends that the Alamo SWD-1 cannot be the subject of a lien authorized by N.D.C.C. ch. 35-24 because it is not an oil or gas well. Redemption also contends the state court's temporary restraining order must be dissolved because of procedural errors committed by Major and the state court.

For the reasons set forth below, the court agrees with Redemption's first argument, and, for that reason, need not address the second.

## II. **DISCUSSION**

It is clear from the material submitted by the parties that the Alamo SWD-1 could only be used for the disposal of salt water and other waste fluids. Not only was this the sole use allowed by the injection permit issued by the Industrial Commission, Redemption's lease with the surface owner provided only for the disposal of salt water and other fluid waste and did not authorize production of oil or gas.[1]

---

[1] In fact, there is no indication that Redemption's lessor even owned the mineral interest.

4

In addition, the Alamo SWD-1 was to be a stand-alone, commercial disposal facility where third parties drilling or operating oil or gas wells in the area could dispose of salt water and other fluid wastes upon payment to Redemption. In other words, the Alamo SWD-1 was not dedicated to, nor an integral part of the operation of, any particular oil or gas well or wells - much less physically connected to oil or gas wells located on the same leased acres, which is a point of some relevance as noted later.[2] In fact, Redemption's counsel acknowledges that Redemption was formed for the purpose of operating one or more salt water disposal wells and does not own any oil or gas wells.

In deciding whether a salt water disposal well can be the subject of a lien under N.D.C.C. ch. 35-24, the court starts first, as it must, with the statutory language. E.g., Locken v. Locken, 2011 ND 90, ¶ 9, 797 N.W.2d 301. But before doing so, the court will outline briefly the contentions of the parties so that they can be kept in mind as the statutory language is considered.

Redemption contends that ch. 35-24 only authorizes liens for material and services furnished for the drilling and operation of "oil or gas wells" (putting aside for the moment the provisions relating to pipelines) and that a salt water disposal well is not an oil or gas well within the meaning of the chapter. Major, on the other hand, contends that Redemption's reading of the statutory language is too narrow. Major argues that the language of the chapter can be interpreted more broadly to include any

---

[2] In particular, Redemption's permit application for the subject well states in part:

Redemption Energy proposes to drill and operate commercial salt water disposal wells, the subject well being Alamo #1. The Alamo #1 will be a new salt water disposal facility in Poe field in NE NE, Section 7, T151N, R99W, McKenzie County, North Dakota. Redemption Energy will provide salt water disposal services for operators in the local area. Salt water will be hauled by truck to the facility, treated, and then stored in tanks before being injected down the well. Injection water will be either produced water, flowback water, or pit water from new Bakken and Three Forks wells in the local area.

(Doc. No. 23-4).

well that supports oil and gas production, even if it does not itself produce oil or gas, either by broadly construing the term "oil or gas well" or by looking to other language in the statute that references "oil or gas purposes."

Major also argues that the salt water disposal wells are covered by ch. 35-24 because they are regulated by the Industrial Commission, which regulates oil and gas production generally. In addition, Major argues that, while the Alamo SWD-1 was permitted as a saltwater disposal well, it physically would have been capable of producing oil or gas if converted for that purpose. Finally, Major argues that some oil would have been skimmed and recovered from waste water to be disposed of in the Alamo SWD-1, but acknowledges this waste water would have come from other wells and would not have been generated by the Alamo SWD-1.

After careful review, the court concludes that the controlling language in terms of whether the Alamo SWD-1 can be subject to a lien under ch. 35-24 is set forth in § 35-24-02, which reads as follows:

> **§ 35-24-02. Who entitled to lien--Amount of lien**
> Any person who shall, *under contract with the owner of any leasehold for oil or gas purposes* or any pipeline, perform any labor or furnish any material or services used or employed, or furnished to be *used or employed in the drilling or operating of any oil or gas well upon such leasehold*, or in the construction of any pipeline, or in the constructing, putting together, or repairing of any material so used or employed, or furnished to be used or employed, is entitled to a lien under this chapter, *whether or not a producing well is obtained* and whether or not such material is incorporated in or becomes a part of the *completed oil or gas well*, or pipeline, for the amount due that person for the performance of such labor or the furnishing of such material or services, including without limitation transportation and mileage charges connected therewith, and interest from the date the same was due.

(italics added).

Under this section, two categories of persons are entitled to claim a lien: (1) persons who furnish material or services used or employed in the drilling or operating of an oil or gas well and

6

(2) persons who furnish material or services used or employed in the construction or repair of a pipeline as defined by the chapter. In this case, since there is no basis for claiming that the Alamo SWD-1 is a "pipeline," Major's claim of a lien under ch. 35-24 rises or falls upon whether the well fits within the first category.

A straightforward reading of § 35-24-02 indicates that three elements have to be satisfied before a lien can be claimed under the first category:

1. The person claiming the lien must have had a contract "with the owner of any leasehold for oil or gas purposes;"

2. The person claiming the lien must have furnished material or services for the "drilling or operating of any oil or gas well;" and

3. The oil or gas well for which the lien is claimed must have been located "upon such leasehold."

Applying this language here, a lien can only be obtained if the Alamo SWD-1 is an "oil or gas well" within the meaning of the statute. In other words, the language of § 35-24-02 forecloses the argument that, even if the Alamo SWD-1 is not itself an "oil or gas well" within the meaning of the statutory language, it is a covered facility because it supports oil or gas production from other wells.

An "oil or gas well" is commonly understood to be a well drilled into the ground from which oil or gas is obtained. Oxford English Dictionary (online 3rd ed. updated March 2004) ("oil well" is "[a] well or shaft drilled into rock strata, from which petroleum is obtained"); Webster's New World Dictionary, Third College Edition, p. 942 (1988) ("oil well" is "a well bored through layers of rock, etc. to a supply of petroleum"); The American Heritage Dictionary, Second College Edition, p. 865 (1985) ("oil well" is "a hole dug or drilled in the earth from which petroleum flows or is

7

pumped"). This is also the sense in which it used by the Industrial Commission in its regulations, which provide the following definitions of oil and gas wells:

> 23. "Gas well" means a well producing gas or natural gas from a common source of gas supply as determined by the commission.
>
> * * *
>
> 33. "Oil well" means any well capable of producing oil or oil and casinghead gas from a common source of supply as determined by the commission.

N.D.A.C. § 43-02-03-01(23)&(33).

Here, the Alamo SWD-1 is not an oil or gas well within this commonly understood meaning of the term since, as a stand-alone commercial disposal well located on land leased solely for the purpose of disposal of waste fluids and permitted by the Industrial Commission for only the same limited purpose, it cannot produce oil or gas. See, e.g., United States v. Overholt, 307 F.3d 1231, 1243 (10th Cir. 2002) (referencing Oklahoma's definition of a disposal well); Royalco Oil & Gas Corp. v. Stockhome Trading Corp., 361 S.W.3d 725 (Tex. Ct. App. 2012) (concluding that a lease agreement for a salt water disposal well was subject to the laws governing leases generally and not the law governing oil and gas leases, even though the regulatory agency governing oil and gas production in Texas had issued a permit for the salt water disposal well); Dick Properties, LLC v. Paul H. Bowman Trust, 221 P.3d 618, 621 (Kan. App. 2010) (noting difference between an oil and gas lease and a salt water disposal agreement).

Even under the Industrial Commission's regulations, the Alamo SWD-1 is treated differently than oil or gas wells. Rather than being subject to N.D.A.C. ch. 43-02-03, which applies to oil or gas wells, it is governed by ch. 43-02-05, which regulates underground injection, and is classified as an "injection well" that is to be used for underground "emplacement of fluids," including, relevant

8

here, those that are "brought to the surface in connection with natural gas storage operations, or conventional oil or natural gas production and may be commingled with wastewaters from gas plants which are an integral part of production operations . . . ." N.D.A.C. § 43-02-05-01(2); see also N.D.A.C. § 33-25-01-02(2) (corresponding North Dakota Department of Health regulation).[3]

North Dakota law[4] requires that this court give the words used in ch. 35-24 their ordinary and commonly understood meaning "unless a contrary intention plainly appears." Locken v. Locken, 2011 ND 90 at ¶ 9; N.D.C.C. § 1-02-02.[5] And here, there is nothing in the language already discussed or in the remainder of ch. 35-24 that plainly expresses an intention that the term "oil or gas well" means anything other than its commonly understood meaning and that it would include a stand-alone, commercial salt water disposal well that cannot be used for the production of oil or gas.

In fact, the tenor of the language in ch. 35-24 is to the contrary. In addition to the provisions of § 35-24-02 that have already been discussed, the court notes the following:

- After providing that liens can be obtained for the furnishing of materials or services for an "oil and gas well" pursuant to a contract with the owner of the leasehold, § 35-24-02 goes on to state that the lien can be obtained "whether or not a producing well is obtained[.]" Here, the use of the word "producing" would be awkward, at best, to refer to the disposal of saltwater or other waste fluid by injection. Further, in yet

---

[3] The court is cognizant that wells within the Class II classification can be permitted for other purposes, but here the permit issued by the Industrial Commission was only for the disposal of salt water and other fluid waste.

[4] This court is bound by North Dakota's rules of statutory interpretation in reviewing one of its statutes. Roubideaux v. North Dakota Dept. of Corrections and Rehabilitation, 570 F.3d 966, 972 (8th Cir. 2009).

[5] Technical terms are to be accorded their special meaning when used in a technical sense under N.D.C.C. § 1-02-03, but there is no difference in this case.

another proviso, § 35-24-02 states that a lien for material can be obtained even if the material is not incorporated or does not become a part of a "completed oil or gas well."

- Section 35-24-03 sets forth what property can be the subject of a lien acquired under the chapter. The tenor of its language suggests that ch. 35-24 extends only to "oil or gas wells" as that term is commonly understood:

    > **§ 35-24-03. Property subject to lien.** Liens created under section 35-24-02 extend to:
    > 1. The whole of the *leasehold for oil or gas purposes* to which the materials or services were furnished, or for which the labor was performed, and the appurtenances thereunto belonging; and
    > 2. All materials and fixtures owned by the owner or owners of such leasehold and used or employed, or furnished to be used or employed *in the drilling or operating of any oil or gas well located thereon*; and
    > 3. *All oil or gas wells located on such leasehold, and the oil or gas produced therefrom, and the proceeds thereof inuring to the working interest* therein as such working interest existed on the date such labor was first performed or such material or services were first furnished; or
    > 4. \* \* \* \*

    (italics added).

- Section 35-24-02 provides that a lien can be obtained for materials and services provided for the construction and operation of a "pipeline," but "pipeline" is defined by § 35-24-01(11) to mean only "any pipeline laid and designed as a means of transporting natural gas, oil, or gasoline, or their components or derivatives, and the right of way therefor." Notably, there is no language extending the lien to pipelines used to convey salt water or other

10

- waste fluids, which, given the relationship between oil or gas wells and pipelines used to convey petroleum products under the existing provisions of ch. 35-24, one would expect to see if the intent was also to include saltwater disposal wells like the Alamo SWD-1.

- Section 35-24-03 provides that one of the items of property that can be subjected to ch. 35-24's lien is oil or gas produced from a well subject to the lien. In addition, § 35-24-06 requires that notice of the lien be given to the purchaser of the oil or gas if a lien upon the production is claimed. Notably, there are no provisions that would accomplish the same purpose for disposal wells, *i.e.*, any provision making payments received by the well owner for disposal of material into the well subject to the lien.

When ch. 35-24 is considered as a whole, it is clear the legislature intended to enact special provisions for obtaining liens for material and services furnished for the drilling and operating of oil and gas wells and for the construction and operating of pipelines used to convey oil, gas, and associated byproducts. For whatever reason (or, perhaps, for no reason at all), the legislature elected not include other wells or pipelines, including: salt water disposal wells; wells used to produce water for industrial, municipal, or residential use; pipelines for conveying non-hydrocarbon gases such $CO_2$; pipelines used for conveying rural drinking water; city water lines, etc.

Major argues it only makes sense for salt water disposal wells to be included within the coverage of ch. 35-24, given they are used for oil and gas purposes, they are regulated by the Industrial Commission, which also regulates oil and gas wells, and that ch. 35-24 provides remedies

11

more suited to such a well than the state's other lien laws. All of these are good arguments for the state legislature expanding the coverage of ch. 35-24 to include saltwater disposal wells.[6]

But here, where the statutory language is clear and unambiguous, the court is prohibited from disregarding it under the pretext of pursuing its spirit. Haggard v. Meier, 368 N.W.2d 539, 541 (N.D. 1985) ("Where constitutional and statutory provisions are clear and unambiguous, it is improper for the courts to attempt to construe the provisions so as to legislate additional requirements or proscriptions which the words of the provisions do not themselves provide."); N.D.C.C. § 1–02–05 ("When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). In other words, it is not the role of the courts to improve upon the statutory language by making it better or more comprehensive. If the North Dakota Legislature believes that the state's other lien laws provide an insufficient remedy for those persons furnishing material and services for the drilling and operation of wells of the type involved here,[7] then it can amend ch. 35-24 or enact a new law. See id.; accord United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241-43 (1989).

Also, the mere fact that the state legislature decided to have the same regulatory agency that permits oil and gas wells regulate commercial saltwater disposal wells is not enough to justify this court ignoring statutory language that is clear and unambiguous. Royalco Oil & Gas Corp. v.

---

[6] Louisiana's lien law applying to oil and gas facilities specifically includes wells used to inject or dispose of substances from wells that produce hydrocarbons. La.Rev.Stat.Ann. § 9:4861. Texas makes specific reference to "oil, gas, or *water* well" when referencing covered wells under its lien law. V.T.C.A. Property Code §§ 56.001(1)-(2) (italics added).

[7] North Dakota's construction (previously mechanic's) lien law is set forth in ch. 35-27. No opinion is expressed whether this law would have been applicable here if it had been relied upon. In addition, any person or entity furnishing material or services for the drilling or operation of salt water disposal well presumably could negotiate for a contractual lien.

12

Stockhome Trading Corp., 361 S.W.3d at 730-31. The same applies for the remainder of Major's arguments.

## III. CONCLUSION AND ORDER

Because the court concludes for the foregoing reasons that Major is not entitled to a lien under ch. 35-24 for the material and supplies it furnished for Redemption's salt water disposal well, Redemption's Motion for Relief from State Court Temporary Injunctive Order (Doc. No. 17) is **GRANTED** and the state court's temporary injunctive order (Doc. No. 1-9) is hereby **VACATED**.

**IT IS SO ORDERED**.

Dated this 12th day of July, 2013.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr.
United States Magistrate Judge